# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| D.C., a minor child, by and through his mother, B.C., ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | 7:20-cv-01105-LSC |
| Coretta Bibbs and Sumter County Board of Education, ) ) ) ) | |
| Defendants. ) ) | |

## MEMORANDUM OF OPINION AND ORDER

Two motions to dismiss are before the Court, one filed by Coretta Bibbs, another filed by the Sumter County Board of Education (SCBE). Bibbs's motion is due to be granted in part and denied in part, and SCBE's motion is due to be granted. The Court will, however, allow the plaintiffs an opportunity to replead their § 1983 claim against SCBE. *See Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the court dismisses the action with prejudice.").

## I. ALLEGATIONS[1]

In May 2018 D.C. was a fifth-grade student at Livingston Junior High School in Sumter County, Alabama. He stood five feet, two inches tall, he weighed ninety-two pounds, and he suffered from Attention Deficit Hyperactivity Disorder. Bibbs was an employee of SCBE. She worked as an aide at D.C.'s school.

On May 7, 2018, Bibbs allegedly assaulted D.C. on school grounds and during school hours. He recounts the assault with the following allegations:

> 20. On or about May 7, 2018, [D.C.] was physically and emotionally assaulted by the Defendant, CORETTA BIBBS, during a physical education ("P.E.") class while at [Livingston Junior High School].
>
> 21. The Defendant, CORETTA BIBBS, instructed the P.E. class of children, including [D.C.], to "line up."
>
> 22. [D.C.] and several other children questioned Defendant BIBBS whether there was [sic] five (5) more minutes left of class and resumed their P.E. activities.
>
> 23. Defendant BIBBS suddenly and without warning became enraged, began cursing at [D.C.], including racial epithets and negative comments about his mother, B.C., repeatedly slapped D.C. and then slammed D.C. against a brick wall.
>
> 26. Defendant BIBBS continued to assault D.C. until another teacher, Coach James, was able to separate [her] from D.C.

---

[1] When ruling on a motion to dismiss, this Court accepts the plaintiff's factual allegations as true and construes them in the light most favorable to the plaintiff. *See Baloco ex rel. Tapia v. Drummond Co., Inc.*, 640 F.3d 1338, 1344–45 (11th Cir. 2011) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

27. Subsequently, D.C. was transported to Whatley Health Services for treatment of the physical injuries he sustained.

Acting through his mother and next friend, D.C. sued Bibbs and SCBE in the Circuit Court of Sumter County, Alabama. The defendants removed the case to this Court and then moved, under Federal Rule of Civil Procedure 12(b)(6), to dismiss portions of D.C.'s complaint.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," its factual content must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

Gauging plausibility is a two-step process. The Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth." *Iqbal*, 556 U.S. at 679. Then the Court assumes the veracity of all well-pleaded factual allegations and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.*

The Court will address Bibbs's motion first and SCBE's motion second.

## III. BIBBS'S MOTION TO DISMISS

### A. State-Law Claims Against Bibbs in Her Official Capacity.

D.C. brings four state-law claims against Bibbs: one for assault and battery, one for negligence/wantonness, one for negligent, wanton and/or willful failure to perform ministerial acts, and one for intentional infliction of emotional distress—also known as the tort of outrage. *Cf. Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 621 (Ala. 2010). Each claim names Bibbs in both her individual and official capacities. Each seeks compensatory damages, punitive damages, and "appropriate declaratory and injunctive relief."

This Court's authority to hear D.C.'s state-law claims arises under its supplemental jurisdiction. *See* 28 U.S.C. § 1367. And when, like here, a federal court exercises supplemental jurisdiction over state-law causes of action, it must apply the substantive law of the forum state. *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1259–60 (11th Cir. 2015). Here the forum state is Alabama. Alabama's

substantive law will therefore determine the success or failure of D.C.'s state-law claims.

Section 14 of Alabama's constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. This provision extends "absolute immunity from suit—and thus liability—for monetary damages based on state-law claims, not only for the State but also for State officials acting in their official capacities." *Ala. State Univ. v. Danley*, 212 So. 3d 112, 124 (Ala. 2016) (citing *Ex Parte Trawick*, 959 So. 2d 51, 55 (Ala. 2006)).

Under well-established Alabama case law, Bibbs is cloaked with sovereign immunity to the extent D.C. seeks money damages against her in her official capacity. Alabama's county school boards, after all, "are local agencies of the State and partake of the State's sovereign immunity." *L.S.B. v. Howard*, 659 So. 2d 43, 44 (Ala. 1995); *see Carroll ex rel. Slaught v. Hammett*, 744 So. 2d 906, 910 (Ala. 1999) ("County boards of education are deemed to be local agencies of the State for purposes of applying the State's sovereign immunity under Art. I, § 14, of the Constitution of Alabama of 1901."). On May 7, 2018—when she allegedly assaulted D.C.—Bibbs was on-duty employee of an Alabama county school board. D.C.'s state-law claims for monetary damages against Bibbs in her official capacity are therefore, in effect, claims against the state itself and are barred by sovereign

immunity. *Ex Parte Mobile Cnty. Dep't of Human Res.*, 815 So. 2d 527, 530 (Ala. 2001). Those claims are due to be dismissed. *Ex Parte Dangerfield*, 49 So. 3d 675, 681 (Ala. 2010) ("It is settled beyond cavil that State officials cannot be sued for damages in their *official* capacities.").

Alabama's sovereign immunity, however, does not necessarily bar D.C.'s state-law claims for injunctive and declaratory relief against Bibbs in her official capacity. *See Danley*, 212 So. 3d at 124. In *Ex Parte Moulton*, the Alabama Supreme Court enumerated six "exceptions" or "general categories of actions which . . . do not come within the prohibition of § 14." 116 So. 3d 1119, 1131, 1141–42 (Ala. 2016). Those exceptions are

> "(1) actions brought to compel State officials to perform their legal duties";
>
> "(2) actions brought to enjoin State officials from enforcing an unconstitutional law";
>
> "(3) actions to compel State officials to perform ministerial acts";
>
> "(4) actions brought under the Declaratory Judgment Act . . . seeking construction of a statute and its application in a given situation";
>
> "(5) valid inverse condemnation actious brought against State officials in their representative [or official] capacity"; and
>
> "(6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, and (b) actions for damages brought against state

officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State."

Here, in addition to compensatory and punitive damages, D.C. seeks "appropriate injunctive and declaratory relief" from Bibbs. Because the parties never briefed whether this request falls within one of Section 14's six exceptions, Bibbs's motion is due to be denied without prejudice *to the extent* D.C. seeks injunctive and declaratory relief. Bibbs, in her official capacity, has leave to seek immunity from these claims at the summary-judgment stage, assuming such a request complies with obligations imposed by Federal Rule of Civil Procedure 11.

### B. Federal Claim Against Bibbs in Her Official Capacity.

Along with her state-law claims, D.C. brings a 42 U.S.C. § 1983 claim against Bibbs in her individual and official capacities; Bibbs moved to dismiss only the official-capacity component. She believes that D.C.'s § 1983 claim against her in her official capacity is "merely duplicative of" his claim against SCBE and "is, therefore, unnecessary." The Court agrees.

"When an [official] is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which [the official] is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Suits against municipal

officers in their official capacities "are therefore, in actuality, suits directly against the [entity] that the officer represents." *Id.* And redundant § 1983 suits—suits against local government officials *and* the local government itself—are properly dismissed at the 12(b)(6) stage. *See, e.g., Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1302 n.3 (11th Cir. 2005) (where a plaintiff named a county and a county fire marshal in his official capacity, only the fire marshal's employer—the county—was a proper party); *Duncan v. Bibb Cnty. Sheriff's Dep't*, 471 F.Supp. 3d 1243, 1255–56 (N.D. Ala. 2020) (Coogler, J.); *cf. Busby*, 931 F.2d at 776 ("To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury.").

Under *Busby* and *Abusaid*, D.C.'s § 1983 claim against Bibbs in her official capacity is due to be dismissed. The claim is duplicative of his § 1983 claim against SCBE.[2]

### C. D.C.'s Individual-Capacity Claim for Negligent, Wanton and/or Willful Failure to Perform Ministerial Acts.

Next, Bibbs moved to dismiss Count III of D.C.'s complaint, which is a claim for "negligent, wanton and/or willful failure to perform ministerial acts." She makes two arguments. She first argues that "no such tort exists under Alabama law."

---

[2]   The Court analyzes Bibbs's § 1983 claim against SCBE in Part IV, *supra*.

Second, she argues Count III is "entirely redundant" of D.C.'s other state-law claims and is incapable of supporting a separate jury charge. This portion of Bibbs's motion is due to be denied without prejudice. The viability of Count III and its degree of overlap with other claims are matters best addressed at the summary-judgment stage.

### D. Outrage Claim Against Bibbs in Her Individual Capacity.

Bibbs also moved to dismiss D.C.'s claim for intentional infliction of emotional distress, commonly referred to as "outrage." *Cf. Horne*, 56 So. 3d at 619–20 (Ala. 2010). The tort of outrage has three elements: the defendant acted intentionally or recklessly; her conduct was extreme and outrageous; and her conduct caused emotional distress "so severe that no reasonable person could be expected to endure it." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (quoting *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990)). By "extreme" misconduct, the Alabama Supreme Court means "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Jenkins v. U.S. Fidelity & Guar. Co.*, 698 So. 2d 765, 768 (Ala. 1997).

D.C. stated a plausible claim for outrage. In May 2018, Bibbs was an adult occupying a position of authority. Even still, she allegedly slapped a fifth grader and

"slammed [him] against a brick wall" while "cursing" and screaming "racial epithets." This assault lasted until another teacher intervened and separated Bibbs from her alleged victim. If these allegations prove true, the May 7 incident might qualify as intentional, extreme, and outrageous conduct capable of causing emotional distress so severe no reasonable person could be expected to endure it. D.C.'s outrage claim against Bibbs in her individual capacity satisfies Rule 8(a)(2)'s pleading requirements.

### E. Anonymous Filing.

Finally, Bibbs moved to remove the plaintiffs' anonymity—to require D.C. and his mother to shed their pseudonyms and reveal their identities. This request is due to be denied.

"A party may proceed anonymously in a civil suit in federal court by showing that he [or she] 'has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315–16 (11th Cir. 2011). To gauge whether anonymous pleading is appropriate, courts in the Eleventh Circuit weigh "all the circumstances of a given case." *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992). A court, for instance, might consider (1) whether the plaintiffs are challenging governmental activity, (2) whether the plaintiffs will be required to disclose

information of the "utmost intimacy," (3) whether the plaintiffs will be compelled "to admit their intention to engage in criminal conduct," (4) whether the plaintiffs are minors, and (5) whether the plaintiffs "were threatened with violence or physical harm by proceeding in their own names." *Francis*, 631 F.3d at 1316 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)).

After a careful review of these and other factors, the Court finds anonymous pleading is appropriate in this case. D.C. was and is a minor child and, so far as the Court is aware, he remains a student at school managed by SCBE. This weighs heavily in favor of maintaining D.C.'s anonymity. Furthermore, D.C.'s lawsuit challenges government activity—i.e., the policies and practices of SCBE and a former SCBE employee. This also weighs in favor of anonymity. Given these considerations, and given how Bibbs hasn't explained how or why the plaintiffs' anonymity prejudices her, D.C.'s interest in continued anonymity outweighs any countervailing interest in revealing his identity.

### IV. SCBE's MOTION TO DISMISS

Like his claims against Bibbs, D.C.'s claims against SCBE arise under Alabama tort law and federal constitutional law. Those tort claims are (1) negligence/wantonness, (2) negligent, wanton, and/or willful failure to perform

ministerial acts, (3) negligent and/or wanton hiring, training, retention, and supervision, and (4) intentional infliction of emotion distress. D.C.'s lone federal claim, brought under 42 U.S.C. § 1983, alleges a deprivation of rights guaranteed by the Fourteenth Amendment to the United States Constitution.

SCBE moved to dismiss on two grounds. As to the state-law claims, SCBE raised the defense of sovereign immunity. It moved to dismiss D.C.'s § 1983 claim for failure to state a plausible claim for relief. The Court will address those arguments in turn.

First to immunity. The Alabama Supreme Court ruled in 2009 and again in 2012 that county school boards enjoy sovereign immunity, under § 14 of the Alabama Constitution, from suits brought under state tort or contract law. *Ex Parte Hale Cnty. Bd. of Educ.*, 14 So. 3d 844, 848 (Ala. 2009) ("Because county boards of education are local agencies of the State, they are clothed in constitutional immunity from suit."); *Ex Parte Montgomery Cnty. Bd. of Educ.*, 88 So. 3d 837, 841 (11th Cir. 2012) ("It is well settled in Alabama that local school boards are agencies of the State, not of the local governmental units they server, and they are entitled to the same absolute immunity as other agencies of the State.") (citation and internal quotation marks omitted). And unlike suits against school officials, e.g., Bibbs, the § 14 exceptions enumerated in *Ex Parte Moulton*, 116 So. 3d at 1131–32, 1141, don't extend to suits

against the school board itself. *See Bd. of Sch. Comm'rs of Mobile Cnty. v. Weaver*, 99 So. 3d 1210, 1217 (Ala. 2012). Those exceptions apply "only to actions against State officials," not "to actions against State agencies" like county school boards. *Id.* Accordingly, all of D.C.'s state-law claims against SCBE are due to dismissed with prejudice, even those seeking injunctive or declaratory relief.

Finally, SCBE moved to dismiss D.C.'s claim under 42 U.S.C. § 1983. In pertinent part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

For purposes of § 1983, Alabama's county school boards are treated as "local governing bodies," c*f. Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1290 (11th Cir. 2004), and, in some circumstances, local governing bodies can face § 1983 liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). The question is whether the local governing body itself—not just its employees or agents— subjected the plaintiff to a deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–480 (1986) ("*Monell* reasoned that recovery from a municipality

is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered."). The question, in other words, is whether the local government's conduct, and not the conduct of its employees, was the "moving force" behind the plaintiff's alleged injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (quotation marks omitted).

To distinguish municipal or local-government liability (actionable) from vicarious or respondeat superior liability (not actionable) courts ask if the "official policy" of a local government—or, in this case, the official policy of a county school board—caused the plaintiff's alleged deprivation. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Official policy might arise from an officially promulgated written policy, from enacted legislation, or from the decisions or actions of whichever "particular official has final policymaking authority" in an area of local government. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–127 (1988).

D.C.'s § 1983 claim against SCBE is due to be dismissed because none of his complaint's factual allegations link an alleged deprivation to official SCBE policy. The section of his complaint entitled "Factual Allegations" mentions SCBE only one time:

> 28. Subsequently [after May 7], Bibbs'[s] employment was terminated by SCBE.

And after a careful review of his *entire* complaint, the Court found only four well-pleaded and SCBE-related factual allegations: (1) that D.C. was a student at an SCBE school; (2) that Bibbs was an SCBE employee; (3) that Bibbs assaulted D.C. on SCBE property; and (4) that SCBE fired Bibbs after the alleged assault. Holding SCBE liable, at least under these facts, would impose respondeat superior or vicarious liability on a local government entity. Without some *factual* content connecting Bibbs's conduct on May 7, 2018 to an official SCBE policy or custom, D.C.'s § 1983 claim against SCBE does not satisfy Rule 8(a)(2) pleading requirements.

Federal Rule of Civil Procedure 15(a)(2) instructs district courts to freely allow amendments "when justice so requires." Fed. R. Civ. P. 15. And justice normally requires that plaintiffs be "given at least one chance to amend the[ir] complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). The Court will therefore allow D.C. an opportunity to amend his complaint and reallege his SCBE § 1983 claim. Any amendment must be in good faith and consistent with Federal Rule of Civil Procedure 11.

## V. ORDER

For the reasons just explained,

- Bibbs's motion (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART**. All state-law claims against Bibbs in her official capacity are

**DISMISSED WITH PREJUDICE** to the extent they seek monetary damages. D.C.'s § 1983 claim against Bibbs in her official capacity is **DISMISSED WITH PREJUDICE**. The rest of Bibbs's motion is **DENIED WITHOUT PREJUDICE**.

- SCBE's motion (Doc. 11) is **GRANTED**. D.C.'s state-law tort claims against SCBE are **DISMISSED WITH PREJUDICE**. D.C. has eleven (11) days from this Order's entry to file an amended complaint and replead his § 1983 claim against SCBE. Should D.C. fail to file a timely amended complaint, the Court will prejudicially dismiss his § 1983 claim against SCBE.

- The parties are **DIRECTED** to meet, confer, and submit a Rule 26 planning report within fourteen (14) days of this Order's entry.

**DONE** and **ORDERED** on May 12, 2021.

L. Scott Coogler
United States District Judge

203323